UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
:
UNITED STATES OF AMERICA,                  :      **ORDER DENYING MOTION**
:      **FOR COMPASSIONATE**
-against-                                  :      **RELEASE**
:
ANGEL RAMIREZ,                             :      17 Cr. 693 (AKH)
:
Defendant.         :
:
-------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Defendant Angel Ramirez moves to reduce his sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A). Ramirez contends that his current health conditions, the conditions of his confinement, and the COVID-19 pandemic constitute "extraordinary and compelling" circumstances warranting compassionate release. *See* Pet'r Br., ECF No. 103. The Government opposes, arguing Ramirez has not demonstrated "extraordinary and compelling" reasons justifying compassionate release, and that the 18 U.S.C. § 3553(a) sentencing factors do not warrant a reduction in sentence. *See* Opp'n Br., ECF No. 104. For the reasons discussed below, Ramirez' motion is denied.

## BACKGROUND

        Pursuant to a plea agreement dated November 5, 2018, Defendant Angel Ramirez plead guilty to one count of conspiring to sex traffic a minor, in violation of 18 U.S.C. § 1594(c). Revised Final Presentence Investigation Report ("PSR"), ECF No. 99, at ¶¶ 4–5. From early September 2017 through October 2017, Ramirez and co-Defendant Aoul Santos facilitated prostitution of the victim, a minor 15-year-old female from New Jersey. *Id.* at ¶¶ 9–14. Among other things, Ramirez advertised the victim through commercial sex website Backpage, arranged for the victim to meet with "customers," made hotel reservations, and transported the victim to

and from various hotels in New York.  *Id.* at ¶ 12.  On these occasions, the victim performed commercial sex acts in exchange for money, which she then provided to Santos and Ramirez, although Ramirez claimed he never received any money.  *Id.* at ¶ 14.  Ramirez was arrested on February 16, 2018.  *Id.* at ¶ 13.

At sentencing, I detailed the serious nature of the offense and noted that Ramirez substantially assisted Santos in exploiting the victim.  Sent. Tr. at 30:8–31:24. Additionally, the victim's mother filed a victim impact statement describing the severe effect of Ramirez' and Santos' conduct on the victim and her family.  Ramirez accepted responsibility for his conduct and expressed remorse, and I sentenced him to a within-guidelines term of imprisonment of 108 months.

On January 15, 2021, Ramirez filed a request for compassionate release with the Bureau of Prisons (BOP).  That request is still pending review.  On March 8, 2021, Ramirez moved under 18 U.S.C. § 3582(c)(1)(A) to reduce his sentence, claiming that his current health conditions place him at risk of complications if he were to contract COVID-19 and that the conditions at Fort Dix FCI, where Ramirez is incarcerated, place his health at risk.  Specifically, Ramirez indicates that high blood pressure and a lung puncture wound from 2003 place him at heightened risk in the event he contracts COVID-19.  Pet'r Br. at 2; *see also* PSR at ¶ 63. According to the Government's submission, Ramirez' medical records reflect that he was fully vaccinated against COVID-19 with the Pfizer vaccine.  Opp'n Br. at 2.

## DISCUSSION

### A. Legal Standard

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F.Supp.3d 613, 614 (S.D.N.Y. 2020).  Section

2

3582 of Title 18 of the U.S. Code provides one such exception by permitting a court to modify a term of imprisonment "upon motion of the defendant" if the defendant has exhausted certain administrative requirements. 18 U.S.C. § 3582(c)(1)(A). Under these circumstances, a court may reduce the defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). In so doing, the Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). "Application of the § 3553(a) factors requires an assessment of whether the relevant factors 'outweigh the "extraordinary and compelling reasons" warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence.'" *United States v. Daugerdas*, --- F. Supp. 3d ---, 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020) (alterations in original) (quoting *United States v. Ebbers*, 432 F. Supp. 3d 421, 430–31 (S.D.N.Y. 2020)).

In the Second Circuit, the policy statement issued by the U.S. Sentencing Commission pertaining to compassionate release, section 1B1.13 of the Sentencing Guidelines, "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020). "However, courts remain free – even after *Brooker* – to look to § 1B1.13 for guidance in the exercise of their discretion." *United States v. Burman*, 2021 WL 681401, at *5 (S.D.N.Y. Feb. 21, 2021) (internal quotation marks omitted); *see also United States v. Seng*, 2021 WL 961749, at *2 (S.D.N.Y. Mar. 15, 2021).

The relevant policy statement provides that a reduction is permitted if "[e]xtraordinary and compelling reasons warrant the reduction" and "defendant is not a danger to

3

the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13.  So far as is pertinent here, the Application Notes to that policy statement provide that a defendant can make a showing of an "extraordinary and compelling reason" by demonstrating severe medical infirmity as follows:

> (A) Medical Condition of the Defendant.⸺
>
>> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> (ii) The defendant is⸺
>>
>>> (I) suffering from a serious physical or medical condition,
>>>
>>> (II) suffering from a serious functional or cognitive impairment, or
>>>
>>> (III) experiencing deteriorating physical or mental health because of the aging process,
>>
>> that substantially diminishes the ability of the defendant to provide selfcare within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, Application Note 1.  The moving party bears the burden of proving that extraordinary and compelling reasons exist.  *See United States v. Ebbers*, 432 F. Supp. 3d 421, 426–27 (S.D.N.Y. 2020) (citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *see also United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010) ("[I]f the defendant seeks decreased punishment,

4

he or she has the burden of showing that the circumstances warrant that decrease.") (quoting *Butler*, 970 F.2d at 1026); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

### B. A Sentence Reduction is Not Warranted for Ramirez

Ramirez is unable to meet his burden to show that "extraordinary and compelling reasons" and the Section 3553(a) factors warrant reducing his sentence. To begin, Ramirez has failed to articulate a sufficiently extraordinary or compelling reason why his sentence should be modified. In support of his motion, Ramirez argues that the combination of (1) COVID-19, (2) the medical care available at Fort Dix, (3) Ramirez's status as high risk due to high blood pressure and his lung injury, and (4) the inability to socially distance at Fort Dix constitutes extraordinary and compelling reasons justifying release. Pet'r Br., ECF No. 103, at 5. The Government acknowledges that "an unvaccinated inmate who presents a medical risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition, presents an extraordinary and compelling circumstance under [Section 3553(a)]." Opp. Ltr., ECF No. 106, at 4. However, the Government represents that Ramirez has been vaccinated against COVID-19 and that Fort Dix FCI has taken significant steps to control COVID-19. *Id.* at 2, 4–5.

Serious as the COVID-19 pandemic is, Ramirez' situation does not constitute an extraordinary and compelling circumstance. I agree with other courts in this circuit that have found "the risk of COVID-19 for a vaccinated individual"—even one with Ramirez' medical history—"is substantially reduced to the point that a defendant will typically not be able to demonstrate extraordinary and compelling reasons after he has been vaccinated." *United States v. Jones*, 2021 WL 4120622, at *2 (S.D.N.Y. Sept. 9, 2021); *see also United States v. Fernandez*, 2021 WL 5304320, at *3 (Nov. 15, 2021) (finding vaccination sufficient to guard against risk of

COVID, even in light of the Delta variant); *United States v. Santana*, 2021 WL 1819683, at *2 (S.D.N.Y. May 6, 2021) (no extraordinary circumstances due to COVID because of the efficacy of vaccines generally and the Pfizer vaccine in particular).

To be sure, I am sympathetic to the heightened risk certain individuals face from COVID-19. *See People at Increased Risk*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last visited Nov. 23, 2021). I do not take lightly that Ramirez had been diagnosed with high blood pressure and sustained a serious lung injury. *See id*. Given Ramirez' vaccinated status, the risk to him is sufficiently limited. While "[t]he current COVID-19 pandemic is an unprecedented worldwide catastrophe . . . it does not warrant the early release of sentenced inmates in federal prisons convicted of serious, dangerous offenses, like [Ramirez], whose medical conditions and risk of contracting the virus cannot be deemed 'extraordinary and compelling.'" *United States v. Mood*, 2020 WL 3256333, at *1 (S.D.N.Y. June 16, 2020) (denying release to 53-year-old with diabetes, hypertension, and obesity where "[t]here is no question that [the defendant] has health issues, but his condition is stable and has been effectively managed by routine monitoring and medication").

But even setting aside, without deciding, the Government's representations that the Fort Dix facility has made major strides in its response to the virus,[1] I cannot conclude that release is proper. Weighing the Section 3553(a) factors, I find that reducing Ramirez's sentence would fail to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment," or to "protect the public from further crimes of the defendant." 18 U.S.C.

---

[1] The Government represents that "the COVID-19 pandemic is well controlled at Fort Dix. [As of June 2021], there are no current cases among either inmates or staff. There have been 1765 recovered inmates and 93 recovered staff members." Opp'n Ltr. at 2. As of June 2021, Fort Dix had vaccinated approximately 55% of inmates, including Ramirez. *Id.* at 3.

6

§ 3553(a). The crime here——conspiring to sex traffic a minor——was undoubtedly serious. The minor victim was only 15 years old at the time of Ramirez' conduct. PSR at ¶ 10. Ramirez was instrumental in facilitating the victim's performance of commercial sex acts in exchange for money. *Id.* at ¶¶ 11–14. As I noted at sentencing, "[t]he nature and circumstances of the offense make it a very serious crime [which] creates a degradation of humanity that is not easily read or discussed." Sent. Tr. at 30:14–19. If that were not enough, the fact that Ramirez has served less than half his total sentence further persuades me that release at this time would be unfaithful to Section 3553(a). Reducing his sentence from 108 months to, effectively, 45 months, would dilute the sentence's deterrent effect and fail to adequately promote respect for the law. *See, e.g., United States v. Seshan*, No. 14 Cr. 620, 2020 WL 2215458, at *4 (S.D.N.Y. May 6, 2020) (denying motion for compassionate release where, *inter alia*, defendant had served only a small portion of the overall sentence); *compare United States v. Copeland*, No. 02 Cr. 1120, 2020 WL 2537250, at *2 (E.D.N.Y. May 19, 2020) (granting the motion for release when applicant had served "229 months (or 81.8%) of a 280-month sentence"). Indeed, "release would provide an undue windfall that would severely undermine . . . the sentence this Court imposed." *United States v. Brady*, No 18 Cr. 316, 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020). For the same reasons that necessitated Ramirez's 108-month sentence, which are incorporated by reference herein, I find that modifying his term of incarceration would disserve the above important sentencing factors.

        In sum, Ramirez's motion to reduce his sentence is denied. The Clerk of Court shall terminate the open motion (ECF No. 103).

        SO ORDERED.

Dated:    November 30, 2021                      _/s/ Alvin K. Hellerstein_____
             New York, New York                 ALVIN K. HELLERSTEIN
                                                               United States District Judge